Danser *v.* Warwick.

---

### Eliza A. Danser

*v.*

### William Warwick.

1. A valid trust of personal property may be created by mere spoken words, and proved by parol evidence.

2. A valid trust of a mortgage debt may be created by parol, for though a trust thus created will not pass any interest in the land held in pledge, yet it is good as to the debt, and will entitle the *cestui que trust* to the payment of his debt out of the proceeds of the sale of the land.

---

On final hearing on bill, answer and proofs taken before a master.

*Mr. George C. Beekman,* for complainant.

*Mr. Joel Parker,* for defendant.

THE VICE-CHANCELLOR.

The complainant is the widow of David C. Danser. She seeks to have a parol trust established and enforced against the defendant. She alleges that her husband, some months before his death, assigned the bond and mortgage in controversy to the defendant, upon a parol trust or understanding that he would forthwith, or by a short day, transfer them to her. The transfer to the defendant was intended to be merely a step in vesting her with title. The assignment to the defendant bears date February 1st, 1875, and Danser died on the 13th day of the following September. The bond and mortgage were in Danser's possession at the time of his death, and have since then been constantly in the possession of the complainant. The defendant has never asked for them, nor attempted to get possession of them. A month or six weeks prior to Danser's death, the defendant directed an assignment to be drawn to the complainant, stating to the person to whom he gave the direction that he must draw it for Danser, who would pay him. He, at the same time, said it was right that the old lady—referring to the complainant—should have the bond and mortgage. Danser, at this time, was prostrated by the disease which shortly afterwards caused his death. The defendant did not remain to execute the assignment, but said he would return soon and do so. He did not return that day. He was subsequently informed, on two or three different occasions, while Danser was living, that the assignment had been drawn and was ready for execution. On each occasion he said he had forgotten or neglected to execute it, but would call soon and do so. He never fulfilled his promise. Two or three weeks after Danser's death, he called for the assignment Danser had made to him, and which he had left when he gave direction for the draft of the one to the complainant, and stated that he meant to do what was right about the matter, but he would not execute the assignment to the complainant until things were fixed up; Danser owed him. He took both papers and has never executed the assignment to the complainant.

This narrative comprises only those facts which are not disputed by either party.

Danser *v.* Warwick.

The defendant denies that the mortgage was transferred to him subject to a trust, but says, on the contrary, that the assignment was made to satisfy a promissory note he held against Danser, upon which there was due $2,000 of principal and a year and six or seven months' interest.  His explanation of the preparation, by his direction, of an assignment to the complainant is this: he says, some time after the execution of the assignment to him, he ascertained that the person who made the mortgage had no title on record for the mortgaged premises; that he went at once to Danser and told him he had swindled him, and that if he did not take the mortgage back he would make him.  He says that Danser replied that the mortgagor's title was all right, but if he was dissatisfied he would pay him his debt, or give him another security, and he could then re-assign the mortgage.  He further says that it was ultimately arranged that Danser should have two mortgages, which were then liens on his lands, canceled, and execute a mortgage thereon to him, and he was then to assign the mortgage in controversy to the complainant.  He says it was after this scheme had been agreed upon that he ordered the assignment to the complainant to be drawn.

These statements present the question of fact to be decided. The counsel of the defendant, however, insists that, as a matter of law, the bill in this case must be dismissed, regardless of what the evidence demonstrates the truth to be in respect to the trust alleged, his contention being that the trust set up by the complainant is one which cannot be established except by written evidence.   The trust, it will be observed, affects personal property, and not lands.   The subject of it is a debt.   That part of the statute of frauds which enacts that all declarations and creations of trust shall be manifested by writing and signed by the party creating the same, or else shall be void and of no effect, applies only to trusts of lands, and has no application to trusts of personal property.  A valid trust of personalty may be created verbally, and proved by parol evidence.  A trust of personal property, almost precisely like the one under consideration, and which had been created by mere spoken words, and was supported by only parol evidence, was upheld by Chancellor Williamson in

Danser *v.* Warwick.

*Hooper* v. *Holmes, 3 Stock. 122;* also *Kimball* v. *Morton, 1 Hal. Ch. 26; Sayre* v. *Fredericks, 1 C. E. Gr. 205; Eaton* v. *Cook, 10 C. E. Gr. 55; 2 Story's Eq. Jur.* § *972; 1 Perry on Trusts* § *86.* A valid trust of a mortgage debt may be created by parol; for, though a trust thus created cannot embrace the land held in pledge, yet it is good as to the debt, and will entitle the *cestui que trust* to sufficient of the proceeds of sale, when the land is converted into money, to pay the debt. *Sayre* v. *Fredericks, supra; Benbow* v. *Townsend, 1 M. & K. 506; Childs* v. *Jordan, 106 Mass. 321.*

It must be held, then, that the trust alleged in this case is valid, and if it has been sufficiently proved, the complainant is entitled to have it established and enforced. The question then is, has it been proved? A high degree of evidence should be required. Before the court engrafts a trust upon a written instrument, absolute on its face, it should require the most cogent proof. Such proof, I think, has been furnished in this case. The undisputed facts make a strong case against the defendant. He attempts to explain and moderate the force of the one having the greatest weight. I refer, of course, to the fact that he had an assignment drawn to the complainant, and that when he gave the order he said it was right that she should have the bond and mortgage. His attempted explanation has, however, resulted in a series of contradictions which utterly destroy his testimony.

By his answer, which is under oath, he says that after he sent his assignment to Ocean county for record, he was informed that the mortgagor had no title on record for the mortgaged premises, and that he went at once to see Danser, and that an arrangement was then made by which Danser was either to pay his debt, or substitute another security, and he was then to re-assign the mortgage. His assignment was not lodged for record until October 23d, 1875. Danser had then been dead more than a month, so that the arrangement, at the time stated, was unquestionably a fabrication. When the defendant came to testify, he swore that before he lodged his assignment for record, he had heard, from one George P. Conover, that the mortgagor had no title, and he went at once to see Danser. But it is perfectly clear, from

the evidence, that Conover could not have given this informa-
tion until long after Danser's death ; for he did not have it him-
self.   Conover obtained his information from the mortgagor, and
the mortgagor swears that he first obtained it from a search made
in December, 1876.   The defendant was subsequently recalled
and re-examined, against the complainant's objection, and with-
out an order for that purpose, and then swore that one Edward
P. Jacobus first informed him that the mortgagor had no title,
and that this information was given to him very soon after the
assignment was made to him.   But, upon the examination of
Jacobus, it was shown that the search from which he obtained
his information was not made until after Danser had been dead
more than a month.   So it is perfectly clear that the information
which the defendant says led to his interview with Danser did
not come to him until after Danser was dead, and the conclusion
is therefore unavoidable that no such interview as he describes
took place.   The tergiversation of the defendant upon this point
renders his testimony unworthy of credit.   I find it impossible
to believe him.

It must also be remarked that the defendant's conduct in rela-
tion to the custody of the bond and mortgage, as portrayed by
himself, shows very clearly that he did not believe they were his
property.   He says the bond and mortgage were delivered to
him, with the assignment, on the day of the date of the assign-
ment, and that he took them to a hotel, in which he and Danser
were jointly interested, and which was under the management of
Danser, and threw them in a desk in the bar-room.   He retained
the assignment.   He gave them no further care or attention, but
carried the assignment to his house and placed it in his safe.
He does not know when or how Danser got possession of the
bond and mortgage.   So far as appears, he has never tried to
find out.   Danser did not live in the hotel, but occupied a dwell-
ing in the village where the hotel was located.   The defendant
says, that while Danser was sick, on the occasion of his last visit to
him, Danser told the complainant to get the bond and mortgage
and give them to him, but that she refused to do so, and, to
repeat his own words, " she was just as cross to me as she could

be." He did not ask Danser why he had taken them from the desk, nor did he insist upon their being at once surrendered. He never asked for them after Danser's death, nor did he make any attempt to obtain possession of them. Every phase of his conduct evinces a consciousness that he had no right to them, and that any attempt to take them from the possession of the complainant would be met by a resistance which he knew was grounded in right and truth. The evidence, in my opinion, fully establishes the trust alleged.

The defendant also insists that the trust upon which the complainant's action is founded should not be enforced, because it was concocted to cheat and defraud Danser's creditors. It is enough to say of this contention that no such defence is presented by the answer, and that the complainant's right to a decree cannot be defeated by a defence she has had no opportunity to meet and disprove.

There must be a decree establishing the trust and requiring the defendant to execute it. The defendant must pay costs.